GEORGE A. HUNT *et al. vs.* FRANKLIN S. BREWER *et al.*

Androscoggin. Decided June 8, 1878.

*Evidence. Payment.*

The defendant was indebted to the plaintiffs, first as he was member of a firm and afterwards individually, and gave his note in payment, taking back this receipt: "Received from F. S. Brewer his 90 day note for $300, to be paid at either bank in Portland." There was a contention as to whether there was an actual appropriation, by the parties, of the note on the joint account of the defendants or on the several account of Brewer. *Held,* that upon this issue, it was not error to instruct the jury that the receipt was silent and could have no legitimate bearing one way or the other.

ON EXCEPTIONS.

ASSUMPSIT, on account annexed.

The defendants dissolved as copartners in the grocery business, September 27, 1875, when there was a balance due from them to the plaintiffs. Subsequently to the dissolution the defendant Brewer continued to purchase of the plaintiffs, and October 22, 1875, gave their agent his personal note, taking back the receipt

in the head note stated, of the same date and signed "George A. Hunt & Co. Starbird." The defendants claimed, and introduced evidence to show, an appropriation of the note by Brewer to the copartnership debt. The plaintiffs claimed that no appropriation was in fact made by Brewer, and that they made the appropriation to Brewer's account, and introduced the original entry on their day book, under date of October 22, 1875, thus: "Notes Receivable, Dr. to F. S. Brewer, 90 day note for $300.00, $300.00."

The presiding justice instructed the jury that on the question, on which of the two accounts the note was to be applied, the receipt was silent and could have no legitimate bearing, as in the opinion more fully appears; and the plaintiffs alleged exceptions.

*S. M. Carter*, with whom were *Frye, Cotton & White*, for the plaintiffs.

*L. H. Hutchinson, A. R. Savage & W. W. Sanborn*, for the defendants.

LIBBEY, J. Prior to September 27, 1875, the defendants were copartners, and on that day they dissolved their copartnership. Prior to the dissolution the defendants had traded with the plaintiffs, and there was an admitted balance due the plaintiffs unless it had been paid. Subsequent to the dissolution, Brewer had traded with plaintiffs and was indebted to them individually. On the 22nd of October, 1875, Brewer gave to the plaintiffs his personal note for $300 on ninety days, and took their receipt therefor, which did not specify for what it was received. The question of fact was presented to the jury whether there was an actual appropriation, by the parties, of the note on the joint account of defendants, or on the several account of Brewer. There was evidence both ways. In presenting the case to the jury, the judge instructed them upon this point as follows: " There is only one piece of evidence to which I feel it my duty to call your attention bearing upon that point, and that is the receipt which was given at the time the note was delivered, which is before you and has been the subject of comment by counsel. With respect to that receipt, I deem it my duty to give you a specific instruction,

and that is that the receipt for the note does not show, upon the face of it, whether the note was or was not given in discharge of the joint indebtedness of Brewer and Lothrop, or the individual indebtedness of Brewer alone. It shows from whom it was received, but not upon which of the two accounts it was to be applied. Upon the latter point it is silent and can have no legitimate bearing one way or the other." To this instruction exception is taken. The exceptions do not show what instruction was given as to the legal rule of appropriation, in case no actual appropriation of the payment was made by the parties. In such case the law would appropriate the payment in discharge of the several debt of Brewer. We must assume that this rule was given.

From the statement in the exceptions, of the issue presented to the jury and the language used by the judge, we must assume that the portion of the charge excepted to related to the issue of fact upon which the jury was to pass, whether there was an actual appropriation by the parties of the three hundred dollar note in payment of the joint indebtedness, or the several indebtedness of Brewer. Upon this issue the instruction was correct, for the receipt is entirely silent as to what the note was received for, and hence contained no evidence upon the issue of actual appropriation.

· <em>Exceptions overruled.</em>

WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.

APPLETON, C. J., dissenting. The plaintiffs had an account against Brewer & Lothrop, and one against Brewer. The defendant Brewer gave his note to the plaintiffs, for which they gave him a receipt in the following words: "Lewiston, October 22, 1875. Received from F. S. Brewer his ninety day note for three hundred dollars, to be paid at either bank in Portland. Geo. A. Hunt & Co. Starbird."

This receipt is undoubtedly open to explanation, but unexplained it has in and of itself an obvious meaning. It is a receipt from the plaintiffs to the defendant Brewer alone. On its face the plaintiffs are to account for its amount to the defendant

Brewer, and to no one else. It being Brewer's individual note, the payment, presumptively, is to be made from his funds, and he alone has the right to call upon the plaintiffs to account for the amount paid.

The fact that Brewer may be indebted as a member of the firm of Brewer & Lothrop, as well as on his own account, does not alter or change the natural meaning of the language. If Brewer had been indebted only as an individual, no one would hesitate as to the meaning of the words. But the *prima facie* meaning of the words must be the same, whether Brewer owed individually or as a member of one or more firms.

In *Livermore* v. *Claridge*, 33 Maine, 428, 429, Shepley, J., uses this language: " When a payment is made by one who is under a several and also under a joint liability to the same party, and the money is not shown to have been derived from the fund from which the joint liability was to be met, the law applies it to discharge the several liability, as being the appropriation most favorable to the creditor." The note being that of Brewer, the presumption is that it was to be and was paid from his funds, in the absence of any proof to the contrary.

The instruction given was " that the receipt for the note does not show upon the face of it whether the note was or was not given in discharge of the joint indebtedness of Brewer & Lothrop, or the individual indebtedness of Brewer alone. It shows from whom it was received, but not upon which of two accounts it was to be applied."

The receipt contains no reference to Brewer & Lothrop. It does not purport to affect them or their interests. The question is as to the meaning of the receipt itself, without reference to anything outside its words. The court erred in the construction of the receipt. It on its face relates only to dealings between the parties to it and can only be construed by its own terms; and they have no relation to the firm of Brewer & Lothrop.

It is urged that proper instructions were given as to the law of appropriation of payment. Assuming them to have been so given, that does not change the effect of the instruction of which complaint is made.

The law of appropriation depends upon the facts to which it is to be applied. The primary inquiry is what are the facts. The complaint is that the jury were erroneously instructed as to the facts to which the law of appropriation applied. However correctly the law of appropriation might have been stated, if an erroneous ruling was given as to the facts or the *prima facie* construction and effect of an instrument, then the very basis of appropriation would or might be erroneous.

The fact to be determined was, to whom and for what purpose the receipt in evidence was given, and what did it mean. The plaintiffs had claims against Brewer, and Brewer & Lothrop. If a receipt of a note or a sum of money from the plaintiffs to Brewer means the same thing as a receipt from the plaintiffs to Brewer & Lothrop, if an entry to F. S. Brewer means the same thing as one to Brewer & Lothrop, then the ruling was right; but if a receipt from the plaintiffs to Brewer & Lothrop differs from a receipt from the plaintiffs to Brewer, then the ruling was erroneous. The importance of this ruling consists in this, that it negatives the *prima facie* presumption that it was a receipt between the parties thereto and not a receipt between other parties. The defendant was entitled to this presumption in the ascertainment of the facts, and the ruling that he was not so entitled was clearly wrong.

Evidence may undoubtedly be received to explain the meaning of a receipt; but the question is not as to the reception of evidence, but as to the construction of certain language in the absence of all evidence affecting its meaning.

The instructions given other than those to which exceptions are alleged are not reported. What they were must be matter of conjecture. Our action must be based entirely on what is before us, not upon what may or may not have been. The instructions given were clearly erroneous, and the exceptions should be sustained.

DICKERSON and PETERS, JJ., concurred in this dissenting opinion.